NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL BREWER, *individually and on behalf of other similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> DOMINO'S PIZZA LLC, <br><br> Defendant. | Civil Action No. 24-10486 (RK) (JBD) <br><br> **OPINION** |

**KIRSCH, District Judge**

 **THIS MATTER** comes before the Court upon a "Motion to Compel Arbitration and Dismiss this Litigation and for Sanctions" (the "Motion") (ECF No. 18) filed by Defendant Domino's Pizza LLC ("Domino's" or "Defendant"). Plaintiff Samuel Brewer ("Plaintiff") opposed the Motion *in toto*. (ECF No. 19; "Pl. Opp.".) Defendant replied. (ECF No. 20; "Def. Reply".)

 The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is **GRANTED** to Compel Arbitration, **GRANTED** to Dismiss, and **DENIED** for Sanctions.

## I. BACKGROUND

 Plaintiff Samuel Brewer, a commercial truck driver who worked for Domino's from approximately October 2022 to July 2024, brought a putative class action against his former

employer under New Jersey state employment law, originally in New Jersey state court. (*See generally* ECF No. 1-1.) Plaintiff, and those similarly situated to him, were truck drivers hired by Domino's to transport pizza products from various supply chain centers to pizza stores around the country. (ECF No. 1-1 ¶¶ 21, 23.) Although Domino's operates its supply chain centers across the United States, Plaintiff worked exclusively out of the Edison, New Jersey location. (*Id.* ¶¶ 21–28.) Plaintiff alleges that, in violation of the New Jersey Wage and Hour Law ("NJWHL"), Domino's failed to pay its truck drivers the required overtime pay, *i.e.*, one-and-a-half times the regular hourly rate for each hour worked over 40 hours during a given week. (*Id.* ¶¶ 37–42.)

This action was initially filed in the Superior Court of New Jersey, Law Division, Monmouth County on October 9, 2024. (ECF No. 1 ¶ 1.) Following service of the summons and complaint, Defendant, a global pizza company, removed this case to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (*Id.* ¶¶ 2, 5.) Defendant thereafter sought to compel arbitration under Michigan law. (ECF Nos. 18, 18-5; "Def. Mot." at 10.)

According to Defendant, Plaintiff signed an arbitration agreement (ECF No. 18-4; the "Agreement" or the "Arbitration Agreement") that refers all disputes between the parties to binding arbitration subject to limited exceptions. Defendant attached the Agreement to its Motion. (*See id.*) As provided, the Agreement consists of six pages and includes: (i) a cover letter from Molly Gellerman ("Gellerman"), Domino's Vice President of Human Resources (*id.* at 2; the "Cover Letter"); (ii) a flyer highlighting the "significant features of the Domino's Arbitration Program" (*id.* at 3); (iii) three pages of Arbitration Agreement terms in English (*id.* at 4–6; "Agreement Terms"); and (iv) the Arbitration Agreement Acknowledgment (*id.* at 17; the "Acknowledgment").[1]

---

[1] The Agreement Terms are also reproduced in Spanish (*id.* at 7–11), and Italian (*id.* at 12–16).

The Cover Letter, among other things, indicates that new hires must sign the Arbitration Agreement in order to commence or continue their employment. (*Id.* at 2.) However, employees have the option to opt out of arbitration within 30 days of signing the Agreement without any risk to their employment. (*Id.*) There is no argument or evidence in the record indicating that Plaintiff ever opted out of arbitration.

The first paragraph of the Agreement Terms provides that arbitration shall be governed by the Federal Arbitration Act ("FAA") or if the FAA does not apply, then Michigan arbitration law. (*Id.* at 4.) The Agreement Terms also include, *inter alia*, an overview of claims excluded from binding arbitration, the form of arbitration, the rules of arbitration, procedures for opting out of arbitration, and severability. (*Id.* at 4–6.) At the bottom of the final page of the Agreement Terms is the following paragraph, conspicuously written in all capitals and bold language:

> **MY SIGNATURE ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I UNDERSTAND THAT, UNLESS I TIMELY SEND THE OPT-OUT EMAIL OR LETTER REFERENCED ABOVE TO THE PROPER ADDRESSEE, I WILL BE REQUIRED TO ARBITRATE ALL DISPUTES WITH THE COMPANY THAT ARE COVERED BY THIS ARBITRATION AGREEMENT.**

(*Id.* at 6) (bold and capitals in original). Gellerman's signature appears below the paragraph. (*Id.*) The following page, and the final page of the entire Agreement, is the Acknowledgment entitled "New Jersey Arbitration Agreement." (*Id.* at 17.) It states, "[f]ollowing is the electronic signature of the team member acknowledging the receipt and reading of the New Jersey Arbitration Agreement." (ECF No. 18-4 at 17.) At the bottom of the page is a table entitled "Team Member eSignature." (*Id.*) The table and its contents are reproduced here:

| Full Name | IP Address | e-Signature Name | e-Sign Code | e-Signature Date |
|---|---|---|---|---|
| Brewer,Samuel | | samuel brewer | 4388 | 2022-11-15-11.43.32.000000 |

(*Id.*)[2]

Submitted with Defendant's Motion and the Agreement is a Declaration of Kashmiere Apollon ("Apollon"), Director of Human Resources Operations for Domino's. (ECF No. 18-3; "Apollon Decl." or "Declaration".) In the Declaration, Apollon attested to the following facts regarding Defendant's routine business practices including its employee onboarding.[3] (Apollon Decl. ¶¶ 5, 6.) As part of onboarding, new employees are required to complete certain online forms utilizing Domino's self-service Team Member Service Center ("TMSC"). (*Id.* ¶¶ 5–7.) Among the required forms is the Agreement which includes the Acknowledgment. (*Id.* ¶¶ 8, 11.)

Upon selecting the "Arbitration Agreement" link among other "To Do List items" in the TMSC, the employee is instructed to read the Agreement Terms in a language of their choosing. (*Id.* ¶¶ 10–12.) Then, the new employee is provided with instructions and the Agreement Terms, as well as the Cover Letter and a flyer highlighting features of Domino's arbitration program. (*Id.* ¶ 13.) Following that, the employee is brought to the Agreement Terms for review and the Acknowledgment for signature. (*Id.*) Employees sign by entering their name and the last four digits of their Social Security number and then clicking a button to accept. (*Id.* ¶ 18.) After the Agreement

---

[2] In a telephone conference on May 21, 2025, the parties confirmed on the record that the operable arbitration agreement for the purposes of this case and the subject Motion is the Agreement, dated November 15, 2022 at 11:43AM, attached as Exhibit A to the Apollon Declaration. (*See* ECF No. 18-4.) To the extent there are other purported arbitration agreements, the parties agree they are not relevant to this case or the Motion.

[3] As discussed *infra* note 20, Plaintiff objects to paragraph 14 of the Apollon Declaration based on various evidentiary bases. (Pl. Opp. at 11–14.) However, the Court is not relying on paragraph 14 in its decision herein and thus need not resolve the evidentiary disputes regarding it. Therefore, for the purposes of this Opinion, including this background section, the Court omits any reference to paragraph 14 of the Apollon Declaration.

is signed, it is available for review throughout their employment in the "To Do List" of the TMSC. (*Id.* ¶ 15.)

Defendant moves to compel arbitration based on the purportedly signed Agreement, supported by the Apollon Declaration. Plaintiff opposes the Motion arguing that (i) the Court does not have jurisdiction or authority to enforce the Agreement under the Michigan Uniform Arbitration Act ("MUAA"), Michigan Compiled Laws ("MCL") § 691.1681 *et seq.*, and (ii) Defendant cannot prove that Plaintiff unambiguously manifested assent to the terms of the Agreement.

## II.    **LEGAL STANDARD**

The Federal Arbitration Act (the "FAA") "reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "And when the parties have done so, arbitration agreements must be enforced according to their terms like any other contract would be." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 325 (3d Cir. 2022) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

Section 2 of the FAA serves to preempt state law where it would otherwise conflict with the FAA. *Id.* (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)). The *Erie* doctrine counsels "federal courts [to] enforce both federal and state arbitration law" but to favor federal law where they conflict. *Adler v. Gruma Corp.*, 135 F.4th 55, 64 (3d Cir. 2025) (first citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); then citing *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 202–03 (1956); and then citing *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989)).

Nevertheless, the FAA is subject to exemptions. Section 1 of the FAA exempts "'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 292 (3d Cir. 2021) (quoting 9 U.S.C. § 1). Whether or not the § 1 exemption brings the contract outside of the FAA, there may be independent grounds to compel arbitration under state law. *Harper*, 12 F.4th at 294. No matter the FAA's applicability to a certain case, the "general policy goals of the FAA favoring arbitration" are still considered. *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004).

When outside the FAA and considering what state law to apply, courts generally start with the choice-of-law rules of the forum state. *Harper*, 12 F.4th at 295 (citations omitted). Even when there is a governing law clause within the contract at issue, a court must engage in a choice-of-law analysis when parties dispute what law is appropriate. *Id.* (citing *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017)). On the other hand, where the governing law is not in dispute, a court need not undertake the choice-of-law analysis. *See, e.g., Redmond v. ACE Am. Ins. Co.*, 614 F. App'x 77, 79 n.2 (3d Cir. 2015) ("As the parties agree that New York law applies, we need not undertake a choice-of-law analysis." (citing *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316–17 (3d Cir. 2014))). Once the applicable law is determined—either through a choice-of-law analysis or consent—the Court considers the pertinent questions at issue, such as whether an arbitration agreement is valid and enforceable. The existence of a valid agreement to arbitrate is a question of general contract law determined by "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Importantly, as with any contract dispute in federal court, the use of state law is confined to substantive interpretation of the agreement. *See infra* § III.B. Even where the validity of an

arbitration agreement is determined by state law, a court must apply federal procedural rules. *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie*, 304 U.S. at 78).

Depending on the circumstances, a motion to compel arbitration is decided under the motion to dismiss standard pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) or the summary judgment standard pursuant to Rule 56. *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019). If a motion to compel arbitration can be resolved on the face of the complaint without considering extrinsic evidence, then the court employs a motion to dismiss standard in considering whether to compel arbitration. *Adler*, 135 F.4th at 63 ("If the motion can be decided 'based on the face of a complaint, and documents relied upon in the complaint,' a motion-to-dismiss standard should be used; otherwise, the summary judgment standard should be applied." (quoting *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013))). However, in circumstances like the one before the Court, where it must consider materials outside of the complaint and documents relied upon in the complaint, the Court applies the summary judgment standard. *See id.*[4]

In applying the Rule 56 standard, the Court employs "a burden-shifting framework." *Guidotti*, 716 F.3d at 773 (citation omitted). First, the Court "ask[s] whether Defendant, as the

_____

[4] For the avoidance of doubt, Plaintiff was unquestionably on notice that the summary judgment standard applies here, yet he neither introduced his own summary judgment evidence nor sought discovery. *See Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 249 n.10 (3d Cir. 2025) (indicating that a party may be entitled to discovery on narrow factual disputes, even where it was not requested, if the party was not on notice that a summary judgment standard was being applied to a motion to compel arbitration). *First*, Plaintiff himself argues that the summary judgment standard is necessary, albeit putting forth the Michigan version of the standard under Michigan Court Rule 2.116(C)(7). (Pl. Opp. at 11.) The Sixth Circuit has explained that this Michigan standard is "identical" to the federal standard under Rule 56. *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 501 (6th Cir. 2007). *Second*, binding Third Circuit precedent in *Guidotti* and again in *Adler* has made clear that a summary judgment standard must be applied when a motion to compel arbitration requires consideration of documents outside of the complaint that were not relied upon within the complaint. Therefore, because the Motion necessarily hinges on documents that fall outside of the complaint and thus beyond what may be considered on a motion to dismiss standard, there is no question that the Court must apply the summary judgment standard.

moving party, has 'show[n] that there is no genuine dispute as to any material fact and [Defendant] is entitled to' an order compelling arbitration 'as a matter of law.'" *Adler*, 135 F.4th at 63 (quoting *Guidotti*, 716 F.3d at 772). Second, once the movant meets this initial burden, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Guidotti*, 716 F.3d at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)) (internal quotation marks omitted).

## III. <u>DISCUSSION</u>

### A. WHAT LAW APPLIES?

Before the Court can commence any analysis, it must first consider what law to apply—the FAA or applicable state law. The inquiry begins with the text of the Agreement. The subject Agreement Terms provide that "[a]ny arbitration hereunder shall be governed by the Federal Arbitration Act ('FAA'), 9 U.S.C. Sections 1-16; provided, however, that if the FAA does not apply, arbitration shall be governed by the arbitration law of the State of Michigan, subject to the terms of this Arbitration Agreement." (ECF No. 18-4 at 4.)

#### 1. Transportation Worker Exemption Under Section 1 of the FAA

In *Harper*, the Third Circuit laid out a three-part inquiry to resolve whether the FAA or alternatively, state law, governs the enforceability of an arbitration agreement. *Harper*, 12 F.4th at 296. While the parties do not dispute the applicability of the transportation worker exemption under § 1 of the FAA and agree that arbitration is being sought here under Michigan law, the Court will briefly discuss the *Harper* three-step framework for the purposes of completeness. In that inquiry, courts must first consider whether the § 1 exemption applies; second, if that analysis is "murky" then courts are to assume the exemption applies and consider whether arbitration is

required under applicable state law; third, if arbitration is unenforceable under state law, then courts must return to Step 1 and finally determine whether § 1 applies. *Id.*

At Step 1, "a court must consider whether the agreement applies to a class of transportation workers who 'engaged directly in commerce' or 'work so closely related thereto as to be in practical effect part of it.'" *Id.* (citation omitted). The Third Circuit construes this as distinguishing between two types of workers under the exemption: (a) those engaged in the classic movement of goods across state lines, *e.g.*, interstate truck drivers, and (b) those who might not themselves cross borders but whose work is a critical part of the interstate movement of goods. *See Singh v. Uber Techs., Inc.*, 67 F.4th 550, 558 (3d Cir. 2023), *as amended* (May 4, 2023), *cert. denied*, 144 S. Ct. 566 (2024) (internal quotation marks and citation omitted).

At least two courts have already determined that Domino's commercial truck drivers qualify for the § 1 exemption. *See, e.g., Carmona Mendoza v. Domino's Pizza, LLC*, 73 F.4th 1135, 1136–37 (9th Cir. 2023) (finding truck drivers were exempt under § 1 even if they themselves did not cross actual borders because "the entire [interstate] journey represented one continuous stream of commerce"), *cert. denied sub nom. Domino's Pizza, LLC v. Carmona*, 144 S. Ct. 1391 (2024); *Oakley v. Domino's Pizza LLC*, 516 P.3d 1237, 1243 (Wash. Ct. App. 2022) (exempting workers under § 1 because they are "directly involved in transporting goods across state or international borders." (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022))).[5] While the Court finds these cases persuasive in determining whether the transportation worker

---

[5] In the context of Domino's, it is important to emphasize the difference between pizza delivery drivers—who generally do not fall under the § 1 exemption—and the plaintiffs in *Carmona Mendoza*, *Oakley*, and likely this case—who fall under the § 1 exemption. *See, e.g., Bryant v. Domino's Pizza Inc.*, No. 22-11319, 2023 WL 5486104, at *4 (E.D. Mich. Aug. 24, 2023). In *Bryant*, the court contrasted those who were exempted because they delivered out-of-state ingredients (even if they themselves did not travel across state lines with the out-of-state ingredients) with those who were not exempted because they delivered pizza and other prepared foods from local Domino's stores to individual customers. *Id.*

exception would apply to the instant matter, the issue nonetheless was not briefed here. The Court need not adopt the holdings of these cases; whether it concludes that the exemption applies, or it finds the determination "murky," the result is the same—the Court proceeds to *Harper* Step 2 and examines whether enforcing arbitration is proper under state law. *Harper*, 12 F.4th at 294.

### 2.    Applicable State Law

Ordinarily, on a motion to compel arbitration, a court must invoke the forum state's choice-of-law rules to determine the correct state law to apply. *Adler*, 135 F.4th at 64 (citing *Harper*, 12 F.4th at 295). Had the parties in this case contested the applicable state law (even if the contract specified a particular law), the Court would be bound to conduct a choice-of-law analysis under New Jersey law. Here, however, the parties do not contest what law arbitration is being sought under—they agree it is Michigan state law. (*Compare* Def. Mot. at 11 (Defendant seeking to compel arbitration under the MUAA), *with* Pl. Opp. at 7 (Plaintiff relying on Michigan law throughout their briefing and acknowledging Defendant "relies entirely on the [MUAA]")). As such, the Court need not—and will not—engage in a choice-of-law analysis.[6] Michigan arbitration law governs the enforcement of the Agreement. *See USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999) ("Because the parties appear to be in agreement on [the choice-of-law] issue, we will assume, without deciding, that [the agreed-upon] law supplies the appropriate substantive rules.").

---

[6] There is extensive authority supporting the proposition that a choice-of-law analysis is not required when the governing law is not contested. *See, e.g, Marino v. Brighton Gardens of Mountainside*, 697 F.Supp.3d 224, 229 (D.N.J. 2023) ("[W]here parties' briefs assume that a particular forum's law controls, such implied consent is sufficient to establish choice of law." (internal quotation marks and citations omitted)) (collecting cases); *UBI Telecom Inc. v. KDDI Am., Inc.*, No. 13-1643, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014) ("When the parties agree upon which state's law applies . . . the Court need not conduct [a] choice-of-law inquiry." (collecting cases)); *see also Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 180 (3d Cir. 1995) (en banc) ("[C]hoice of law issues may be waived.").

## B.    THRESHOLD INQUIRIES

Relying on misinterpretations of the text of the MUAA, Plaintiff argues that there are threshold jurisdictional, venue, and procedural barriers precluding both (i) Defendant from moving to compel arbitration in this Court, and (ii) this Court from subsequently enforcing the Arbitration Agreement under the MUAA. (Pl. Opp. at 7–10.) *First*, Plaintiff asserts that this Court "can never have subject-matter jurisdiction over a motion to enforce an arbitration agreement under the MUAA." (*Id.* at 9.) *Second*, Plaintiff posits that no *Michigan* state court can enforce the agreement "because Defendant cannot prove that any Michigan circuit court has personal jurisdiction over him." (*Id.*) *Third*, Plaintiff argues that Defendant has violated "mandated procedural requirements" of the MUAA by "requesting judicial relief under the MUAA from a court that is not a state circuit court in Michigan" and failing to "file the motion in a county in Michigan." (*Id.* at 10.) Since "threshold disputes over venue and jurisdiction should be resolved before merits disputes," the Court addresses Plaintiff's arguments now. *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018). Plaintiff's attempt to ground jurisdiction and venue in Michigan law is unavailing. By both nonsensically asserting that arbitration can only be compelled in a Michigan state court *and* that there is no personal jurisdiction over him in same, Plaintiff's arguments are a transparent and circuitous attempt to evade arbitration at all costs.

### 1.    Subject Matter Jurisdiction

It is black-letter law that a federal court derives its jurisdiction from relevant federal law: 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1332 (diversity jurisdiction). *Hoboken Yacht Club LLC v. Marinetek N. Am. Inc.*, No. 19-12199, 2019 WL 7207486, at *2 n.3 (D.N.J. Dec. 26,

2019).[7] Subject matter jurisdiction is never waivable. *See* Fed. R. Civ. P. 12(h)(1). As such, a district court is required to assess its subject matter jurisdiction before deciding a motion to compel arbitration. *Edmondson v. Lilliston Ford, Inc.*, 593 F. App'x 108, 112 (3d Cir. 2014) (per curiam). If a federal court has subject matter jurisdiction, then it may properly consider a motion to compel arbitration even under state law. *Id.* Subject matter jurisdiction is not a creature of contract and can never be revoked or consented to. *Travelers Indem. Co. of Am. v. Ebner Industrieoffenbau Gmbh*, No. 22-6175, 2023 WL 3615241, at *2 (D.N.J. May 24, 2023) (collecting cases).

Plaintiff does not appear to be arguing that this Court lacks subject matter jurisdiction to hear this case overall.[8] To reiterate, this Court, like all federal courts, derives subject matter jurisdiction exclusively from federal statute, and no state law—including the MUAA—has the power to strip this Court of its jurisdiction. *See Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 n.5 (3d Cir. 2017) ("[S]tate substantive law cannot deprive a federal court of its diversity jurisdiction."). The Supreme Court has held that "[j]urisdiction is determined 'by the law of the court's creation and cannot be defeated by the extraterritorial operation of a state statute.'" *Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (quoting *Tennessee Coal, Iron & R. Co. v. George*, 233 U.S. 354, 360 (1914)); *id.* ("[T]he jurisdiction of the federal courts, having existed from the beginning of the Federal government, cannot be impaired by subsequent state legislation." (citing *McClellan v. Carland*, 217 U.S. 268, 281 (1910)) (internal quotation marks omitted); *see also New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 549 (3d Cir. 2011) ("[W]e had recognized that

---

[7] The FAA does not confer federal jurisdiction; instead, an independent jurisdictional basis is always required. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (citation omitted).

[8] To be sure, it is difficult to pin down exactly *what* Plaintiff is disputing—whether that be this Court's overall subject matter jurisdiction, this Court's subject matter jurisdiction to hear a discrete motion to compel arbitration, or this Court's authority to enforce an arbitration agreement under the MUAA. The Court addresses each of these concerns herein, finding them all to be baseless.

interpreting [a] [state] statute in a way that denied parties access to federal courts might well run afoul of the Supremacy Clause." (citing *Allstate Ins. Co. v. Gammon*, 838 F.2d 73, 77 n.7 (3d Cir. 1988)) (internal quotation marks omitted). Consistent with Defendant's Notice of Removal, the Court concludes that it has subject matter jurisdiction over this case pursuant to CAFA, 28 U.S.C. § 1332(d)(2).[9] (*See* ECF No. 1.)

Instead of attacking our subject matter jurisdiction over this *case*, Plaintiff seems to be arguing that under Michigan law, this federal Court does not have subject matter jurisdiction specifically to hear a *motion to compel arbitration* and subsequently enforce an arbitration agreement under the MUAA. (Pl. Opp. at 9.) Plaintiff's assertion relies on a provision of the MUAA entitled "Jurisdiction," which provides that "[a] court *of this state* that has jurisdiction over the controversy and the parties may enforce an agreement to arbitrate." Mich. Comp. Laws § 691.1706(1) (emphasis added). Overreading the language of this provision, Plaintiff essentially argues that this provision exclusively vests jurisdiction over arbitration disputes under Michigan law only to Michigan state courts. This argument misapprehends how federal courts derive their subject matter jurisdiction and sets forth a textual reading of the MUAA so narrow as to lead to an absurd result. Indeed, a Wisconsin federal court rejected a similar reading of the jurisdictional

---

[9] A federal district court has subject matter jurisdiction under CAFA if the case (a) is a putative class action; (b) involves a class of more than 100 members; (c) satisfies minimal diversity requirements; and (d) the aggregate claims of the proposed class members exceed $5,000,000. *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 149 (3d Cir. 2009) (citations omitted). In considering whether jurisdiction is proper in removal cases, a court considers both the complaint and the notice of removal. *Kaufman*, 561 F.3d at 151 (citing *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007)); *see also Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 180 (3d Cir. 2023). The requirements of CAFA are met here. *First*, Plaintiff brings the complaint on behalf of a class pursuant to 28 U.S.C. § 1332(d)(1)(B). (ECF No. 1-1 ¶ 8; ECF No. 1 ¶¶ 8–10.) *Second*, Plaintiff meets the class size requirements under 28 U.S.C. § 1332(d)(5) because, as laid out in the Notice of Removal, the class could be up to 178 individuals. (ECF No. 1 ¶¶ 11–14.) *Third*, minimal diversity under 28 U.S.C. § 1332(d)(2)(A) is satisfied because Plaintiff is a resident of New Jersey and Defendant is a citizen of Michigan and Delaware. (ECF No. 1 ¶¶ 15–20; ECF No. 1-1 ¶¶ 4, 5.) *Fourth*, requirements for the amount in controversy under 28 U.S.C. § 1332(d)(6) are satisfied based on Defendant's calculation of "total potential damages" of $15,585,523.20. (ECF No. 1 ¶ 27.) Subject matter jurisdiction under CAFA is established.

provision of the Nevada Uniform Arbitration Act, which purported to only allow Nevada courts the power to compel arbitration under the law. *Johnson v. Schneider Nat'l, Inc.*, 592 F. Supp. 3d 768, 775 (E.D. Wis. 2022), *vacated by settlement*, No. 21-836, 2022 WL 22412939 (E.D. Wis. June 22, 2022). The court stated that, notwithstanding the text of the NUAA, "the Nevada legislature can only enact statutes that govern its tribunals . . . [and] [cannot] prevent courts of other jurisdictions from applying Nevada's state law to cases where that law controls." *Id.* It opined that in that case, as here, "[e]xclusive jurisdiction [by a specific state court] would create an end-run around an otherwise valid arbitration agreement under state law by allowing a plaintiff to simply avoid the contracted-for arbitration by suing in a state court other than the one identified in the arbitration agreement." *Id.*

Unsurprisingly, the Eastern District of Michigan has determined that the MUAA does not confer "exclusive jurisdiction" to Michigan circuit courts to enter a judgment on an arbitrator's award. *Wizie Com LLC v. Webjet Mktg. N. Am., LLC*, No. 17-11920, 2017 WL 4707487, at *2–3 (E.D. Mich. Oct. 20, 2017). That case involved the same jurisdictional and venue provisions of the MUAA as raised by Plaintiff here. The court declined to read those provisions as inapplicable in federal court and stated that "to the extent the Michigan statute might be interpreted as requiring exclusive enforcement in Michigan circuit courts . . . , the statute cannot be enforced." *Id.* at *3; *see also Smith v. Allstate Power Vac, Inc.*, 482 F. Supp. 3d 40, 48 (E.D.N.Y. 2020) (applying Michigan arbitration law to arbitration waiver analysis after finding the FAA inapplicable).

The Michigan state court decisions—interpreting state *procedural* rules—that Plaintiff relies upon to support his arguments here have "little relevance to interpretation of federal procedural rules" in federal court cases. *See Palcko*, 372 F.3d at 597. And indeed, the cases Plaintiff cites merely stand for the proposition that a Michigan court should determine it has subject

matter jurisdiction before compelling arbitration, a legal principle that no party could or does dispute. (*See* Pl. Opp. at 7.) The authority cited by Plaintiff does not and cannot strip a federal court of its subject matter jurisdiction, nor does it support Plaintiff's erroneous conclusion that this Court does not have the authority to both hear a motion to compel arbitration and subsequently enforce an arbitration agreement under Michigan law (i.e., the MUAA). The Court rejects Plaintiff's arguments as to this Court's subject matter jurisdiction and its authority to hear the subject Motion as to the enforceability of the arbitration agreement.

### 2.    Personal Jurisdiction

Because the Court has dismissed Plaintiff's arguments regarding the need for a Michigan state court to exclusively hear Defendant's Motion, his arguments regarding Michigan's purported lack of personal jurisdiction over him are irrelevant. However, these arguments do paint an illustration of the "end-run around" referenced by the Eastern District of Wisconsin hereinabove—Plaintiff is attempting "to simply avoid the contracted-for arbitration by suing in a [] court other than the one identified in the arbitration agreement." *Johnson*, 592 F. Supp. 3d at 775.

For the avoidance of doubt, to the extent Plaintiff is trying to argue *this* Court does not have personal jurisdiction over him, it is axiomatic that a plaintiff has no ability to contest a court's personal jurisdiction over him. *See Apostolou v. Mann Bracken, LLC*, No. 07-4950, 2009 WL 1312927, at *3 (D.N.J. May 1, 2009) ("Courts have consistently held that a court always has personal jurisdiction over a named plaintiff because that party, by choosing the forum, has consented to the personal jurisdiction of that court." (quoting *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 646 (6th Cir. 2006))); *see also Turner v. Boyle*, No. 12-7224, 2013 WL 1409903, at *2 (D.N.J. Apr. 8, 2013) ("The concept of 'personal jurisdiction,' or '*in personam* jurisdiction,' refers to a court's power over a particular *defendant*." (emphasis added) (citing *Int'l Shoe Co. v. Wash.*,

326 U.S. 310, 316 (1945))). Thus, by choosing to bring this case in New Jersey, Plaintiff cannot contest personal jurisdiction over him.

### 3.    Venue and Procedure

Plaintiff's remaining arguments are simply a repackaging of his jurisdictional arguments rejected above, but the Court nonetheless will construe these remaining arguments as either procedure- or venue-related. (*See* Pl. Opp. at 10.) Plaintiff argues that Defendant has violated both MCL § 691.1685(1) and MCL § 691.1707 by "requesting judicial relief under the MUAA from a court that is not a state circuit court in Michigan" and failing to "file the motion in a county in Michigan." (*Id.*) MCL § 691.1685 provides that "a request for judicial relief under this act must be made by motion to the *court* and heard in the manner provided by court rule for making and hearing motions." Mich. Comp. Laws § 691.1685(1) (emphasis added). The MUAA defines a "court" as a Michigan circuit court. Mich. Comp. Laws § 691.1681(c). Further, MCL § 691.1707 provides that a request for judicial relief under section 691.1685 shall be made in one of four Michigan "courts." [10] *See* Mich. Comp. Laws § 691.1707.

To the extent these arguments can be construed as Plaintiff disputing proper venue, a federal court's venue is "determined exclusively by federal venue laws." *Howmedica Osteonics Corp. v. DJO Glob., Inc.*, No. 16-2330, 2017 WL 1136671, at *3 (D.N.J. Mar. 27, 2017) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 54 (2013)). State rules governing venue are undoubtedly procedural, and such rules are supplanted by applicable federal procedural rules in federal court. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995)

---

[10] Specifically, the statute allows a motion to be made (1) "in the court of the county in which the agreement to arbitrate specifies the arbitration hearing is to be held"; (2) "if the hearing has been held, in the court of the county in which it was held"; (3) "in the court of any county in which an adverse party resides or has a place of business"; or (4) "if no adverse party has a residence or place of business in [Michigan], in the court of any county in [Michigan]." Mich. Comp. Laws § 691.1707.

("[Q]uestions of venue . . . are essentially procedural, rather than substantive, in nature." (citation omitted)). Thus, any of the provisions of the MUAA purporting to set the proper venue for a motion to compel arbitration under it are procedural and not applicable to this federal court sitting in diversity.[11]

Because this case was removed to federal court, the federal removal statute, 28 U.S.C. § 1441, rather than the general venue statute, 28 U.S.C. § 1391, governs. *Halpern v. Centroid Sys., Inc.*, No. 24-07037, 2024 WL 4533370, at *8 (D.N.J. Oct. 21, 2024) (citing *Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665 (1953)). Section 1441 provides in pertinent part that:

> any civil action brought in a State court of which district courts of the United States have original jurisdiction . . . may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). This action was originally filed by Plaintiff in the Superior Court of New Jersey, Law Division, Monmouth County and thus removal to the District of New Jersey was proper. *See* 28 U.S.C. § 118(a).

Even if it were hypothetically true that the parties contractually agreed to a Michigan judicial forum, Plaintiff waived enforcement of any rights under such a hypothetical provision by

---

[11] The Seventh Circuit's recent decision in *Rodgers-Rouzier v. American Queen Steamboat Operating, Co, LLC*, while dealing with the Indiana Uniform Arbitration Act ("IUAA"), is factually similar, and thus persuasive to the Court. 104 F.4th 978, 988 (7th Cir. 2024). The plaintiff in *Rodgers-Rouzier* argued the IUAA is only enforceable in state courts and thus the federal district court had no authority to compel arbitration under the IUAA. *See id.* at 983, 85. The IUAA, which, similar to the MUAA, defines "court" as only an Indiana state court, was purported to grant only an Indiana state court the authority to compel arbitration. *Id.* at 988. The Seventh Circuit disagreed. The Circuit stated that if "the IUAA renders this agreement 'valid and enforceable' as a matter of substantive Indiana law, then, under *Erie*, a federal court must give that clause the same effect an Indiana court would, even if neither the IUAA nor the FAA authorizes the federal court to do so in their texts." *Id.*; *id.* at 990 ("The Court conceptualized the right to compel arbitration as a substantive right that should have received equal treatment in state and federal courts." (citing *Bernhardt*, 350 U.S. at 202–04)). Thus, a district court has the authority to compel arbitration under state law "to the extent and by means substantially equivalent to those that [state] law grants to the [] state court system." *Id.* at 990.

filing his suit in New Jersey. *See, e.g., The Indian Express Priv. Ltd. v. Hali*, No. 20-2741, 2022 WL 154354, at *6 (D.N.J. Jan. 18, 2022) (finding that filing a suit in an unauthorized forum in contravention of a contractual clause specifying another forum impliedly waives plaintiff's rights under the contract's forum provision); *see also MTR Gaming Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 375 (W.D. Pa. 2012) (collecting cases); *see also Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 331 (5th Cir. 1987) ("By bringing suit in a district other than the districts designated in the forum selection clause, the plaintiff in *Dupuy-Busching* in effect had waived the right to its bargain." (citation omitted)). Thus, venue is appropriate here.

Further, to the extent Plaintiff is simply making an improper procedure-based argument, Plaintiff's position reflects an underlying assumption that state procedural law governs, rather than federal procedural law. But since there is no "clear intent" to be bound by state procedural rules, the Court is limited to applying only *substantive* Michigan law; Plaintiff's contentions to the contrary are rejected. *See Adler*, 135 F.4th at 71 (A "provision selecting a particular state's law should be read as . . . replacing the [federal] procedures with state procedures" only where there is "clear intent" to do so (citing *Oberwager v. McKechnie Ltd.*, 351 F. App'x 708, 710 (3d Cir. 2009))). The "generic choice-of-law provision, standing alone, is not sufficient evidence of such [clear] intent." *Oberwager*, 351 F. App'x at 710 (citing *Roadway Package*, 257 F.3d at 293, *abrogated on other grounds by Hall St.*, 552 U.S. 576). Plaintiff makes no averments that there is "clear intent" in the Agreement to be bound by Michigan procedural rules, and the Court, on its own, finds no sign of clear intent by the parties to be bound by state procedural rules in the Agreement. Therefore, Plaintiff's argument that this federal court must enforce—and Defendant must follow—the procedural requirements of the MUAA is unavailing.

Having determined that the Motion is properly before this Court, the Court now turns to the Agreement itself. *See Edmondson*, 593 F. App'x at 113 ("If the District Court determines it has subject matter jurisdiction, it should then proceed with a determination on the motion to compel arbitration.").

### C.    THE DELEGATION CLAUSE

The parties disagree as to who should determine whether the parties entered into a valid arbitration agreement. Defendant contends that the arbitrator should make this determination because the Agreement contains a clause delegating all gateway questions, including scope, validity, and enforceability questions, to the arbitrator. (Def. Mot. at 11–13.) Plaintiff, on the other hand, urges that it is the Court—not an arbitrator—who always decides the validity of an arbitration agreement. (Pl. Opp. at 10–11.) Plaintiff is correct.

"[N]otwithstanding the presence of a delegation clause, a court still may not send a dispute to arbitration without first determining that there is an agreement to arbitrate that is enforceable under applicable law." *Adler*, 135 F.4th at 66 (citing *New Prime*, 586 U.S. at 111). Importantly here, the threshold dispute is not an arbitrability issue that can be delegated to the arbitrator, such as "whether [the] arbitration agreement applies to the particular dispute," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); rather, it involves an antecedent question of whether there is an arbitration agreement in the first place. Even where an arbitration agreement delegates certain issues to the arbitrator, whether a valid arbitration agreement exists is "'always' for courts to decide at the outset." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 879 (6th Cir. 2021) (applying Michigan law) ("[C]ourts must decide challenges to the formation or 'existence of an agreement in the first instance.'" (quoting *In re Auto. Parts Antitrust Litig.*, 951 F.3d 377, 385 (6th Cir. 2020))); *Fromm v. Meemic Ins. Co.*, 690 N.W.2d 528, 530–31 (Mich. Ct. App. 2004) ("The existence of an arbitration agreement . . . [is] [a] judicial question[] for the court,

not the arbitrators." (citation omitted)); *Adler*, 135 F.4th at 66 (same). Accordingly, regardless of any Agreement Terms that arguably delegate questions as to the Agreement's validity to an arbitrator, the Court must decide whether there is an arbitration agreement in the first instance. *See Henry Schein, Inc.*, 586 U.S. at 69 ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." (citation omitted)).

### D.    ASSENT TO ARBITRATION

Assent to an arbitration agreement is a question of contract law determined by "ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Here, as established previously, the parties do not dispute that Michigan contract law applies. (*See* Pl. Opp. at 14–18 (Plaintiff citing cases applying Michigan contract law), Def. Reply at 10–14 (Defendant citing same).) Accordingly, the Court applies Michigan contract law in determining whether Plaintiff assented to the Agreement.

Michigan law, like the FAA, has a public policy favoring arbitration. *Lichon v. Morse*, 968 N.W.2d 461, 467 (Mich. 2021) (citation omitted). Traditional legal principles governing contract interpretation are applied to arbitration agreements. *Id.* (citation omitted). "[A] valid agreement must exist for arbitration to be binding." *Ferndale v Florence Cement Co*, 712 N.W.2d 522, 527 (Mich. App. Ct. 2006) (citation omitted). A valid contract under Michigan law has five components: "'(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *McMillon v. City of Kalamazoo*, 983 N.W.2d 79, 81 (Mich. 2023) (quoting *Bank of America, NA v First American Title Ins. Co.*, 878 N.W.2d 816 (Mich. 2016)).

Only the mutuality of agreement, which requires "a meeting of the minds," is at issue here. *See In re StockX*, 19 F.4th at 881 (citing *Huntington Nat'l Bank v. Daniel J. Aronoff Living Trust*, 853 N.W.2d 481, 488 (Mich. Ct. App. 2014)) (internal quotation marks omitted). "Whether there

was a 'meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Id.* (quoting *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006)). This "objective theory of assent[] focus[es] on how a reasonable person in the position of the promisee would have interpreted the promisor's statements or conduct." *Rood v. Gen. Dynamics Corp.*, 507 N.W.2d 591, 598 (Mich. 1993).

"In Michigan, one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Gavette v. United Wholesale Mortg., LLC*, No. 24-1557, 2025 WL 318224, at *3 (6th Cir. Jan. 28, 2025) (citing *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999)) (internal quotation marks omitted); *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("[O]ne who signs a contract which he has had an opportunity to read and understand, is bound by its provisions.") It is a plaintiff's duty to read a contract and seek an explanation if they do not understand its terms. *In re StockX*, 19 F.4th at 882 (citing *Nikkel*, 596 N.W.2d at 920); *Sutton v. U.S. Small Bus. Admin.*, 92 F. App'x 112, 125–26 (6th Cir. 2003) ("Michigan law 'presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents.'" (quoting *McKinstry v. Valley Obstetrics–Gynecology Clinic*, 405 N.W.2d 88, 96 (Mich. 1987))). A plaintiff failing to remember that he signed an arbitration agreement or failing to remember that he received information about arbitration does not nullify a signed arbitration agreement. *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 840 (6th Cir. 2021).

### 1.    Defendant's Burden

As explained earlier, Defendant's Motion is considered under the summary judgment standard under Rule 56. *See supra* § II. This summary judgment standard employs a burden-

shifting framework where Defendant, as the moving party, has the initial burden to show there is no genuine dispute of material fact as to the challenged element of the Agreement: Plaintiff's assent. *Guidotti*, 716 F.3d at 772–73 (citing Fed. R. Civ. P. 56(a)); *Tucker v. United Wholesale Mortg., Inc.*, No. 24-1595, 2025 WL 1082316, at *1 (6th Cir. Apr. 10, 2025) (applying Michigan contract law and Rule 56) (citing *Boykin*, 3 F.4th at 838). If Defendant meets its burden, the burden then shifts to Plaintiff to show there is a genuine dispute of material fact. *Id.* Plaintiff, as the nonmovant, must support their assertion of a genuine dispute of material fact by looking beyond the pleadings and "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56; *see also Guidotti*, 716 F.3d at 773 (citing *Celotex*, 477 U.S. at 324).

Defendant satisfies its burden of establishing the existence of an agreement to arbitrate through the Agreement itself. As background, Defendant also relies on the uncontested facts set forth in the Apollon Declaration to provide context to support the existence of a valid agreement to arbitrate. Plaintiff argues that paragraph 14[12] of the Apollon Declaration should be disregarded

---

[12] Paragraph 14 of the Apollon Declaration states the following:

> Once the employee has reviewed the Arbitration Agreement documents, they are prompted by a message stating that an electronic signature is required, and there are boxes to enter their name and the last four digits of their Social Security Number before clicking a button to accept. A message immediately above the accept button reads, "**Arbitration Agreement**" "Following is the electronic signature of the team member acknowledging that the team member has read, understands, and agrees to be legally bound to all of the above terms of the Arbitration Agreement." The last four digits of the employee's Social Security Number is verified by Domino's Human Resources Information Services team against the employee's human resources data to ensure its accuracy.

(Apollon Decl. ¶ 14 (bold in original).)

as hearsay and not based wholly on personal knowledge.[13] (Pl. Opp. at 11–14.) Plaintiff does not contest any other portion of the Apollon Declaration, and thus the remainder of the Declaration is properly considered here. *See Est. of Fajge v. Dick Greenfield Dodge, Inc.*, No. 11-04527, 2012 WL 2339723, at \*12 (D.N.J. June 18, 2012) (material introduced on a summary judgment may be considered by the court if not challenged); *see also Dandy v. Ethicon Women's Health & Urology*, No. 20-00431, 2022 WL 1284735, at \*2 n.2 (D.N.J. Apr. 29, 2022) (relying on facts in record in summary judgment decision where opposing party does not object to its consideration). While "supplement[ing] signed contracts with evidence of their presentation" is not required under Michigan law, the Court finds the remaining unobjected-to portions of the Apollon Declaration helpful in providing background facts regarding the circumstances in which Plaintiff entered into the Agreement. *See, e.g. Gavette*, 2025 WL 318224, at \*3 (finding "sworn testimony from a human-resources director explaining how and why [plaintiff's] signature appeared on the Agreement" was not necessary under Michigan law).

---

[13] The Court need not resolve these objections because, as discussed *infra*, there is a valid assented-to arbitration agreement based on the underlying Agreement alone. In other words, paragraph 14 of the Apollon Declaration is not material to the Court's decision. However, the Court notes that the disputed portion of the Apollon Declaration might fall under an exception to hearsay, such as the business records exception under Federal Rule of Evidence 803(6), or as non-hearsay offered not for the truth of the matter. Lastly, at this summary judgment posture, a fact need not be in admissible form at the current moment, rather a court can consider facts "*capable* of being presented in a form that would be admissible in evidence." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 603 (3d Cir. 2020) (emphasis added) (citing Fed. R. Civ. P. 56(c)(2)) (internal quotation marks omitted).

Plaintiff also argues that Apollon does not have personal knowledge about the matters contained in paragraph 14 of the Apollon Declaration. (Pl. Opp. at 12–13.) "Under Rule 56, a 'declaration used to support or oppose a motion must be made on *personal knowledge* . . .'" *Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (emphasis added) (citing Fed. R. Civ. P. 56(c)(4)). Courts in this Circuit regularly consider declarations regarding business processes based, in part, on a review of records in the ordinary course as within the declarant's personal knowledge. *See, e.g., Serfess v. Equifax Credit Info. Servs., LLC*, No. 13-0406, 2015 WL 5123735, at \*2 (D.N.J. Sept. 1, 2015) (denying motion to strike declaration of employee who attested to the facts "based on [her] personal knowledge gained through [her] employment with Equifax and/or [her] review of Equifax's business records"); *Envtl. II, Inc. v. Chest Twp.*, 2007 WL 3146745, at \*1 (W.D. Pa. Oct. 26, 2007) ("[P]ersonal knowledge of a matter included in an affidavit under Rule 56(e) may be based not only upon knowledge gained through one's sensory perceptions, but through a review of records of the matter in question.").

As explained in the Apollon Declaration, new employees, including Plaintiff, are required to review and complete certain forms, as a condition of their employment. (Apollon Decl. ¶¶ 7, 8.) The employees access the forms, such as the Agreement and Acknowledgment, through Domino's TMSC self-service website. (*Id.* ¶¶ 5, 8, 11, 16.) In accessing the Agreement from the "To Do List" of the TMSC, employees are first instructed to read the Agreement. (*Id.* ¶ 11.) Next, they are brought to instructions and the Cover Letter, and then finally to the Agreement Terms and the Acknowledgment to sign. (*Id.* ¶¶ 12–13.) Signing is effectuated when the employee enters their name and the last four digits of their Social Security number and then clicks a button to accept as Plaintiff did on November 15, 2022. (*Id.* ¶ 18.) After the Agreement is signed, the executed Agreement is available for review throughout their employment in the "To Do List" of the TMSC. (*Id.* ¶ 15.)

Regardless of the Apollon Declaration, however, the Agreement itself sufficiently shows, on its own, that Plaintiff unambiguously manifested assent for the following two reasons. *First*, it is undisputed that Plaintiff signed the Acknowledgment at the end of the Agreement, and, indeed, Plaintiff does not argue otherwise. *Second*, the language of the Agreement makes clear the signing of the Acknowledgment binds Plaintiff to arbitrate his claims.

Plaintiff electronically signed the Acknowledgment on November 15, 2022 by entering the last four digits of his Social Security number.[14] The Acknowledgment is entitled "New Jersey Arbitration Agreement" and states: "Following is the electronic signature of the team member acknowledging the receipt and reading of the New Jersey Arbitration Agreement." (ECF No. 18-

---

[14] Under Michigan law and federal law, "electronic signatures have the same legal effect as handwritten ones." *Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 705 (6th Cir. 2016) (citing Mich. Comp. Laws § 450.837); *Hardaway v. Aveanna Healthcare, LLC*, No. 23-12246, 2024 WL 2271826, at *3 (E.D. Mich. May 20, 2024) (citing 15 U.S.C. § 7001; Mich. Comp. Laws § 450.837).

4 at 17.) At the bottom of the page is a table entitled "Team Member eSignature." (*Id.*) The table and its contents are reproduced here:

| Full Name | IP Address | e-Signature Name | e-Sign Code | e-Signature Date |
|---|---|---|---|---|
| Brewer,Samuel | | samuel brewer | 4388 | 2022-11-15-11.43.32.000000 |

(*Id.*) The Acknowledgment followed (i) a one-page Cover Letter from Gellerman, Defendant's Vice President of Human Resources (*id.* at 2); (ii) a one-page flyer highlighting the "significant features of the Domino's Arbitration Program" (*id.* at 3); and (iii) three pages of Agreement Terms in English (*id.* at 4–6).

Plaintiff does not contest that he signed the Acknowledgment, rather he contends that the signing of the Acknowledgment did not explicitly bind him to the Agreement. (Pl. Opp. at 15.) He concedes in his Opposition that he "execute[d] the signature page," (*id.* at 4), but nevertheless asserts "it is an objective fact that Plaintiff did not sign [the Agreement]." (*Id.* at 15.) His position is that the Acknowledgment did not provide him with sufficient "warning" or "textual notice" to prove he assented to the Agreement. (*Id.* at 17–18.) These assertions are belied by the text of the Agreement itself, which made clear the purpose and effect of signing the Acknowledgment. The Cover Letter states:

> Enclosed is the Arbitration Agreement which, after you carefully review, you must sign in order to commence or continue your employment. You have 30 calendar days from the date you sign the Arbitration Agreement to opt out of the duty to arbitrate through the procedures described in the Agreement. Electing to opt out will have no impact on your employment status with the Company. **By signing the Arbitration Agreement and not opting out, both you and the Company are giving up various rights, including the right to a trial by jury as well as any right to arbitrate as a class representative, as a class member, or in a collective action.**

(ECF No. 18-4 at 2) (bold in original). The final paragraph in the Agreement Terms states:

> **MY SIGNATURE ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I UNDERSTAND**

**THAT, UNLESS I TIMELY SEND THE OPT-OUT EMAIL OR LETTER REFERENCED ABOVE TO THE PROPER ADDRESSEE, I WILL BE REQUIRED TO ARBITRATE ALL DISPUTES WITH THE COMPANY THAT ARE COVERED BY THIS ARBITRATION AGREEMENT.**

(ECF No. 18-4 at 6) (bold and capitals in original).

These provisions of the Agreement put any reasonable person on notice that the signing of the Acknowledgment—the only place Plaintiff signs in the Agreement—signifies, *inter alia*, that he is legally bound by the terms of the Agreement. (*Id.*) *First*, the Cover Letter explicitly states that Plaintiff "must sign [the Agreement] in order to commence or continue your employment." (ECF No. 18-4 at 2.) This further clarifies that Plaintiff's employment—which lasted from October 2022 to July 2024—was *contingent* on signing the Agreement.

*Second*, although he must sign the Agreement, Plaintiff is provided an opportunity to opt out, as explained therein. (*See, e.g., id.* at 2, 4, 5, 6.) Indeed, the option to opt out was offered repeatedly throughout the arbitration materials.[15] (*See generally id.*) Yet Plaintiff never submitted a request to opt out of the Agreement. (Apollon Decl. ¶ 18.) The Sixth Circuit applying Michigan law found that a party showed objective manifestation of assent to an arbitration agreement "by continuing her employment without returning an opt-out form." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 460 (6th Cir. 2013) (collecting cases). It is not disputed that such is the case here.

*Third*, the Agreement contains a critical final clause in the Agreement Terms, just prior to the Acknowledgment. (ECF No. 18-4 at 6.) This "Conspicuous Clause," which is in bold and

---

[15] (ECF No. 18-4 at 2 ("You have 30 calendar days from the date you sign the Arbitration Agreement to opt out of the duty to arbitrate."); 4 (Agreement indicating the parties agree that all disputes will be submitted to binding arbitration "except to the extent that Employee exercises Employee's opt-out right"); 5 ("Employee has the right to opt out of the obligation set forth herein to submit to binding arbitration."), ("Absent the proper and timely exercise of this opt-out right, Employee will be required to arbitrate all disputes encompassed by this Arbitration Agreement."); 6 ("I understand that, unless I timely send the opt-out email or letter . . . , I will be required to arbitrate all disputes with the company that are covered by this arbitration agreement." (emphasis omitted)).

capital letters, provides that Plaintiff's signature attests that he "read, understand[s], and agree[s] to be legally bound to all of the above terms." (*Id.* at 6.) Also, a sentence in the same bolded and capitalized paragraph explicitly advises Plaintiff that if he does not opt out of arbitration, he "will be required to arbitrate all disputes with the company." (*Id.*) The clear, plain meaning of the written Agreement and Plaintiff's signature on the Acknowledgment establishes a legally binding contract under Michigan law.

Despite the parties producing to the Court the actual Agreement at-issue, as well as the Apollon Declaration, Plaintiff argues Defendant did not follow a "standard practice" of submitting evidence that details the process under which an arbitration agreement was executed. (Pl. Opp. at 16–18.) In support of this premise, Plaintiff cites to a number of cases that are factually distinguishable. *Shirley v. Rocket Mortgage*, No. 21-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022) (granting a motion to compel arbitration relating to consumer hybrid browsewrap[16] agreement); *Lee v. Panera Bread Co.*, No. 22-11958, 2023 WL 2606611 (E.D. Mich. Mar. 6, 2023), *report and recommendation adopted*, No. 22-11958, 2023 WL 2603934 (E.D. Mich. Mar. 22, 2023) (granting motion to compel arbitration relating to consumer modified clickwrap agreement[17]); *Johnson v. Best Buy Co.*, No. 363807, 2024 WL 1228760 (Mich. Ct. App. Mar. 21, 2024) (granting a motion to compel arbitration relating to employment agreement, even where the arbitration policy lacked its own signature block).

---

[16] A "browsewrap" agreement "discloses terms on a website that offers a product or service to the user, and the user assents by visiting the website to purchase the product or enroll in the service." *See Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 (6th Cir. 2013).

[17] A "modified clickwrap agreement," which is one where "the terms being accepted do not appear on the same screen as the accept button, but are available with the use of hyperlink." *Lee*, 2023 WL 2606611 at *3.

Regardless of these inapposite cases, a recent Sixth Circuit decision rejected the notion that such a "standard practice" is required under Michigan law. *Gavette*, 2025 WL 318224, at *3. The facts in *Gavette* mirror the facts here: a company defendant sought to compel arbitration under an arbitration agreement following a suit filed by its ex-employee. *Id.* at *1. The company then put forth testimony or a declaration in the record from an HR director explaining the process that the plaintiff underwent to sign the arbitration agreement. *Id.* at *4. While crediting the testimony as reflecting assent to the arbitration agreement, the Court found the signed agreement itself was sufficient to establish assent to the agreement. *Id.* Thus, as here, a signed Agreement, bolstered by the Apollon Declaration (sans paragraph 14), is clearly sufficient to establish a valid arbitration agreement because Michigan law does not require parties to "affirmatively supplement signed contracts with evidence of their presentation." *Id.*

At bottom, "if a signed agreement exists, only some kinds of denials raise a genuine dispute of material fact."[18] *Tucker*, 2025 WL 1082316, at *2 (applying Michigan contract law and federal summary judgment standard). As referenced previously, a plaintiff not remembering that he signed an arbitration agreement or that he received information about arbitration is an insufficient

---

[18] Indeed, Plaintiff's counsel, Brook S. Lane, filed a declaration indicating that he received "26 different documents consisting of 234 pages" that Plaintiff allegedly executed on November 15, 2022 as part of his employment with Defendant. (ECF No. 19-1 ¶¶ 3–4.) Further, in his Opposition, Plaintiff argues that the timestamp on the Agreement indicates Plaintiff "took no more than 22 seconds to read the 16-page Agreement and then execute the signature page." (Pl. Opp. at 4.) Neither of these assertions creates a genuine dispute of material fact regarding Plaintiff's manifestation of assent, particularly given that Plaintiff has not put forth evidence to show that Domino's either constrained or limited the time Plaintiff had to review and execute the Agreement. *See Tucker*, 2025 WL 1082316, at *3 (finding employee's "naked statement that he lacked adequate time, clothed with no details about how much time he did have to sign his contract" did not create a genuine dispute regarding the circumstances of his signing of the contract); *Gavette*, 2025 WL 318224, at *3 ("[Employee] alleges that [company] asked him to return all onboarding documents 'as soon as possible' so that he could start orientation. But even accepting [employee's] assertion as true, this expression at most merely conveys a sentiment of urgency for commencing [employee's] employment—not that he risked losing his job if he did not immediately sign the documents, unaware of their contents. Nor does [employee] state that the company affirmatively rushed him to sign the Agreement by, say, refusing a request for additional time.")

argument to rebut a signed arbitration agreement. *Boykin*, 3 F.4th at 840. By signing the Acknowledgment—confirming Plaintiff read the arbitration materials—and continuing his employment with Domino's without returning an opt-out form, Plaintiff's clear assent to the Agreement is firmly established. Therefore, Defendant has met its burden to show that there is no genuine dispute of material fact that Plaintiff unambiguously manifested assent to the Agreement.

### 2.    Plaintiff's Burden

The burden now shifts to Plaintiff to point to particular materials in the record showing there *is* a genuine dispute of material fact as to the existence of a contract between the parties. *In re StockX*, 19 F.4th at 882 (first citing Fed. R. Civ. P. 56(c); then citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *Guidotti*, 716 F.3d at 773 ("Once the movant meets their burden, the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted)). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (requiring nonmovant to "point to concrete evidence in the record" (*Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995))).

Plaintiff has failed to take any action that would support his burden to establish a genuine issue of material fact: (i) he has failed to put forth any evidence, such as a sworn declaration[19]; (ii) he has failed to provide reasons he cannot, at this juncture, present facts essential to his

---

[19] One of the cases relied on by Plaintiff, *Nyachira v. New Prime, Inc.,* No. 21-03211, 2022 WL 19239772 (W.D. Mo. May 5, 2022), involved a Missouri federal court's denial of a motion to compel arbitration under the Missouri Uniform Arbitration Act. In that case, the plaintiff employee filed a declaration under the penalty of perjury in which he described his experience signing the arbitration agreement. No. 21-3211, ECF No. 13-2 (W.D. Mo. November 2, 2021). Here, Plaintiff failed to file a declaration or otherwise attest to any facts purporting to controvert the evidence put forth by Defendant.

opposition under Federal Rule of Civil Procedure 56(d); and (iii) he has failed to request discovery on pertinent issues.[20] In other words, without "specific facts showing there is a genuine issue for trial," "the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law." *Grayer v. Twp. of Edison*, No. 02-2969, 2007 WL 2595530, at \*2 (D.N.J. Sept. 5, 2007) (citing *Matsushita*, 475 U.S. at 587). Because Plaintiff cannot rely on his Opposition alone for rebuttal evidence, *see Dawley v. Erie Indem. Co.*, 100 F. App'x 877, 882 (3d Cir. 2004), and he has put forth no admissible evidence to show there is a genuine dispute of material fact, Plaintiff has not met his rebuttal burden. Therefore, the Court concludes that Plaintiff assented to the Agreement under Michigan law and that there is a valid agreement to arbitrate between the parties. For the avoidance of doubt, the enforcement of the Agreement here is "inherent in the agreement's validity under the relevant substantive law, whatever its source." *Rodgers-Rouzier*, 104 F.4th at 990. As a matter of federal law, federal courts have abandoned any distinction between the validity of an arbitration clause as a substantive matter and its enforceability as a procedural matter. *Id.* at 988 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 15–16 (1984) (Stevens, J. concurring in part and dissenting in part)). In other words, "the Supreme Court has consistently understood the specific enforcement of an arbitration agreement to be implied by its substantive validity." *Id.* This means that the validity of the Agreement under Michigan contract law, on its own, confers authority on this Court to compel arbitration. Defendant's Motion is **GRANTED** insofar as Defendant moves to compel arbitration and dismiss this case.

---

[20] Federal Rule of Civil Procedure 56 allows a nonmovant to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). As noted, Plaintiff did not file an affidavit or declaration indicating that he. *See Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 249 (3d Cir. 2025) (citing Fed. R. Civ. P. 56(d)). Nor has Plaintiff otherwise requested discovery.

IV.    <u>**SANCTIONS**</u>

Defendant's counsel also moves for sanctions against Plaintiff's counsel arguing that Plaintiff's counsel's refusal to litigate this dispute in arbitration consistent with its obligations under the Agreement warrants the imposition of sanctions. (Def. Open. at 17–19.) Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A finding of bad faith is a threshold requirement before § 1927 sanctions can be imposed. *See In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015). The decision whether to impose sanctions is within the discretion of the Court. *See LaSalle Nat. Bank v. First Conn. Holding Grp., LLC.*, 287 F.3d 279, 288 (3d Cir. 2002).

While the Court believes that much of the judicial and party resources expended to date were avoidable had the parties expeditiously moved this dispute to an arbitral forum, and giving Plaintiff the benefit of the doubt, the Court declines to make a finding that Plaintiff's counsel's conduct rises to the requisite level of bad faith. Even though Plaintiff electronically signed an Acknowledgment of the Agreement, the Third Circuit has acknowledged there are some thorny legal principles governing motions to compel arbitration. *See, e.g., Adler*, 135 F.4th at 64 (stating "whether the parties had an enforceable agreement to arbitrate" might be a "straightforward question," but "the answer to that question lies in the sometimes not so straightforward principles of federalism, choice of law, and contract interpretation" (citing *Harper*, 12 F.4th at 294)). Given Plaintiff the benefit of the doubt in this case, the Court declines to find this case fits under one of the "narrow[]" situations where sanctions under § 1927 is appropriate. *See LaSalle Nat. Bank*, 287 F.3d at 289 (citations omitted). Defendant's Motion insofar as it requests sanctions against Plaintiff's counsel is **DENIED**.

### CONCLUSION

For the foregoing reasons, Defendant's Motion is **GRANTED** to Compel Arbitration, **GRANTED** to Dismiss, and **DENIED** for Sanctions. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: May 27, 2025